## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ESTATE OF ROSE BOEHS, by and through Renee Heflin, Marlinda Lamle, and Desiree Selby, Personal Representatives; ESTATE OF PENELOPE LAMLE, by and through Joshua Lamle and Lexy Jobe, Personal Representatives; and ESTATE OF MAXINE HOUSTON, by and through Dal Houston, Personal Representative, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-25-00947-JD |
| OKLAHOMA DEPARTMENT OF HUMAN SERVICES; OKLAHOMA HEALTH CARE AUTHORITY; KAYLA BEAN, individually; LENA SCHWEITZER, individually; CYNTHIA WUNDERLE, individually; and JOHN DOES, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## **ORDER**

Before the Court are Defendants Oklahoma *ex rel.* Oklahoma Department of Human Services and Oklahoma *ex rel.* Oklahoma Health Care Authority's (collectively, "the State") Motion to Dismiss Plaintiffs' Amended Complaint [Doc. No. 19]; Defendants Kayla Bean and Lena Schweitzer's Joint Motion to Dismiss Plaintiffs' Amended Complaint [Doc. No. 21]; and Defendant Cynthia Wunderle's Motion to Dismiss Plaintiffs' Amended Complaint [Doc. No. 28] (collectively "the Motions").

Plaintiffs filed responses to each motion. [Doc. Nos. 20, 23, 32]. For the reasons outlined below, the Court grants the Motions.

## I.    BACKGROUND

Plaintiffs are the estates of three individuals who applied for Medicaid benefits and died after applying. [Doc. No. 16 ¶¶ 1, 33, 37, 45, 51, 57, 63]. The details of each individual's application are outlined below.

On October 2, 2023, Rose Boehs transferred assets in exchange for a promissory note. [*Id.* ¶ 32]. On November 6, 2023, Boehs filed her Medicaid application, claiming she was eligible for benefits as of October 2, 2023. [*Id.* ¶ 33]. Kayla Bean was one of the representatives assigned to determine Boehs's Medicaid eligibility. [*Id.* ¶ 34]. Plaintiffs allege that Bean and the State were required to act on Boehs's Medicaid application on or before December 21, 2023. [*Id.* ¶ 35]. On September 9, 2024, Boehs filed a complaint against the Oklahoma Department of Human Services and the Oklahoma Health Care Authority to receive her Medicaid benefits. [*Id.* ¶ 36].[1] On February 24, 2025, Boehs died. [*Id.* ¶ 37]. Counsel for Boehs filed a notice of dismissal without prejudice. *See Hess v. Cartmell*, No. 5:24-cv-00982-JD, Doc. No. 23. On July 15, 2025, Bean, on behalf of the State, denied Boehs's Medicaid application because she had transferred assets in exchange for a promissory note. [Doc. No. 16 ¶ 39].

---

[1] According to the referenced case number and publicly available docket, this federal case was filed on September 23, 2024. *See Hess v. Cartmell*, No. 5:24-cv-00982-JD, Doc. No. 1.

On August 3, 2021, Penelope Lamle transferred assets in exchange for a promissory note. [*Id.* ¶ 44]. On November 24, 2021, Lamle filed her Medicaid application, claiming she was eligible for benefits as of August 3, 2021. [*Id.* ¶ 45]. Lena Schweitzer was one of the representatives assigned to determine Lamle's eligibility. [*Id.* ¶ 46]. Plaintiffs assert that Schweitzer and the State were required to act on Lamle's Medicaid application by January 8, 2022. [*Id.* ¶ 47]. On May 12, 2022, Lamle filed a complaint in federal court against Susan Eads, the Oklahoma Department of Human Services, and the Oklahoma Health Care Authority to receive her Medicaid benefits. [*Id.* ¶ 48]. On June 9, 2022, Schweitzer, on behalf of the State, denied Lamle's Medicaid application because Lamle had transferred assets in exchange for a promissory note. [*Id.* ¶ 49]. On September 14, 2022, Lamle died. [*Id.* ¶ 51]. The Court dismissed her case without prejudice against the Oklahoma Department of Human Services and the Oklahoma Health Care Authority as moot considering Lamle's death. *See Lamle v. Eads*, Case No. 5:22-cv-00391-JD, Doc. No. 66.

On February 3, 2020, Maxine Houston transferred assets in exchange for a promissory note. [Doc. No. 16 ¶ 56]. On January 27, 2022, Houston filed her Medicaid application, claiming she was eligible for benefits as of February 3, 2020. [*Id.* ¶ 57]. Cynthia Wunderle was one of the representatives assigned to determine Houston's Medicaid eligibility. [*Id.* ¶ 58]. Plaintiffs assert that Wunderle and the State were required to act on Houston's Medicaid application by March 13, 2022. [*Id.* ¶ 59]. On May 12, 2022, Houston filed a complaint in federal court against Susan Eads, the Oklahoma Department of Human Services, and the Oklahoma Health Care Authority. [*Id.* ¶ 60]. On

3

June 8, 2022, Wunderle, on behalf of the State, denied Houston's Medicaid application because Houston had transferred assets in exchange for a promissory note. [*Id.* ¶ 61]. On June 3, 2023, Houston died. The Court dismissed her case without prejudice against the Oklahoma Department of Human Services and the Oklahoma Health Care Authority as moot in light of Houston's death. *See Lamle v. Eads*, Case No. 5:22-cv-00391-JD, Doc. No. 66.

Plaintiffs initiated this case in the District Court for Major County against the Oklahoma Department of Human Services and the Oklahoma Health Care Authority. [Doc. No. 1-2 at 3].[2] The State removed the case to this Court based upon federal question jurisdiction. [Doc. No. 1 ¶¶ 3, 4]. Plaintiffs subsequently filed an Amended Complaint, adding Bean, Schweitzer, and Wunderle as Defendants in their individual capacities, in addition to the State. [Doc. No. 16 at 1]. Plaintiffs assert claims for violations of the Due Process Clause of the Fourteenth Amendment against all Defendants [*id.* ¶¶ 67–98], violations of 42 U.S.C. § 1396a(a)(8) via 42 U.S.C. §§ 1983 and 1988 against the individual Defendants [*id.* ¶¶ 99–121]; and violations of 42 U.S.C. § 1396r(c)(2)(A)(v) via 42 U.S.C. §§ 1983 and 1988 against the individual Defendants [*id.* ¶¶ 122–136].[3]

---

[2] In this Order, the Court uses page numbering from the CM/ECF stamp at the top of the district court docket filing.

[3] In Plaintiffs' Response to the State's Motion to Dismiss, Plaintiffs state that they are only asserting their claims via §§ 1983 and 1988 against the individual Defendants and not against the State. "Plaintiffs have brought claims by and through 42 U.S.C. § 1983 to enforce 42 U.S.C. § 1396a(a)(8) and 42 U.S.C. § 1396r(c)(2)(A)(v) of the Medicaid provisions. However, Plaintiffs only brought their § 1983 claims against

In the Motions, Defendants argue that Boehs, Lamle, and Houston (collectively, "the Applicants") failed to provide necessary information for an eligibility determination; the statutes relied upon by Plaintiffs do not confer individual rights under § 1983; Plaintiffs' claims are moot; and the individual Defendants are entitled to qualified immunity.

## II.   STANDARD OF REVIEW

### A.   Motion to Dismiss Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint does not need detailed factual assertions, a pleading that offers only "labels and conclusions" or "pleads facts that are merely consistent with a defendant's liability" will not suffice. *Id.* (internal quotation marks and citation omitted). The burden is on the plaintiff to plead factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In evaluating a Rule 12(b)(6) motion, the Court accepts all well-pled factual allegations as true and views the allegations in the light most favorable to the nonmoving party. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). Conclusory statements,

---

individual Defendants and not the Agencies." [Doc. No. 20 at 14–15]. This means Plaintiffs assert only a Fourteenth Amendment claim against the State.

however, are not entitled to the assumption of truth, and courts are free to disregard them. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

The Court must address what the Court can properly consider when deciding the Motions. "[T]he district court may consider documents referred to in the complaint if the documents are central to the . . . claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

Plaintiffs submitted a great volume of documents as exhibits to their Response to the State's Motion to Dismiss. [*See* Doc. No. 20]. However, when evaluating motions to dismiss, the Court's review is limited to the Amended Complaint and documents referenced in the Amended Complaint as outlined above. If the Court considers additional documents, the Court must convert the motion into one for summary judgment and provide Defendants with notice and an opportunity to present summary judgment evidence. *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253 (10th Cir. 2005). Although the Court *may* consider documents referenced in the Amended Complaint, the Court is not required to do so. *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999) ("We agree with our sister circuits that if a defendant attaches to a 12(b)(6) motion materials referred to by the plaintiff and central to his claim, the court has discretion to consider such materials."). Plaintiffs state in the Amended Complaint that the Applicants submitted Medicaid applications. [Doc. No. 16 ¶¶ 33, 45, 57]. Plaintiffs do not discuss the substance of those applications or rely upon statements made in the applications. Plaintiffs do, however, attach the applications to their Response to the State's Motion to Dismiss. [Doc. Nos. 20-1, 20-2, 20-3, 20-4, 20-5]. Because those

6

applications collectively total thousands of pages, the Court declines to consider them and instead limits its consideration to the Amended Complaint.

### B.    Qualified Immunity Standard

Section 1983 provides a federal cause of action against a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Under the doctrine of qualified immunity, when officials are sued under § 1983 in their individual capacities, they "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Once a defendant raises qualified immunity in a motion to dismiss, the burden shifts to the plaintiff to show: (1) the plaintiff has alleged facts that make out a violation of a constitutional right, and (2) "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted); *see Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019) (discussing the standard for qualified immunity at the pleading stage). Judges are "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every

7

reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation modified). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (alteration in original) (quoting *al-Kidd*, 563 U.S. at 743). "A plaintiff may satisfy this standard by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (quoting *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010)).

The "clearly established" standard "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. The Supreme Court has "repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021). Nevertheless, the "analysis is not a 'scavenger hunt for prior cases with precisely the same facts,' and 'a prior case need not be exactly parallel to the conduct here for the officials to have been on notice of clearly established law.'" *Est. of Smart ex rel. Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020) (citations omitted).

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). "[T]he proper

standard for evaluating dismissal in a qualified immunity case is the normal standard [courts] apply to dismissals generally." *Moya v. Schollenbarger*, 465 F.3d 444, 455 (10th Cir. 2006). At the pleading stage, that means that "plaintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). Plaintiffs bear a lighter burden when attempting to overcome qualified immunity raised in a motion to dismiss than they do at summary judgment. At the pleading stage, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness,'" whereas, at summary judgment, "the plaintiff can no longer rest on the pleadings, and the court looks to the evidence before it." *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (citation omitted). *But see Robbins*, 519 F.3d at 1249 (reasoning that "[t]he *Twombly* standard may have greater bite" in the context of § 1983 suits against individual state actors to reflect "the special interest in resolving the affirmative defense of qualified immunity 'at the earliest possible stage of a litigation'" (quoting *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987))).

## III.  ANALYSIS

### A.  Plaintiffs' claims against the State are dismissed without prejudice because of jurisdictional defects.

The Court first turns to Defendants' argument that Plaintiffs' claims are moot. In Lamle and Houston's prior lawsuit, unbeknownst to the Court, Lamle and Houston had passed while the action was pending. The Tenth Circuit determined that their claims against the State were moot. *Lamle v. Eads*, 134 F.4th 562, 566 (10th Cir. 2025).

9

The issue of mootness is relevant to Plaintiffs' standing to bring this lawsuit. Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies: "[s]tanding concerns whether a plaintiff's action qualifies as a case or controversy when it is filed; mootness ensures it remains one at the time a court renders its decision." *Brown v. Buhman*, 822 F.3d 1151, 1163 (10th Cir. 2016). Because the Applicants died before the initiation of this lawsuit, the Court examines whether Plaintiffs have standing. *See Est. of Schultz v. Brown*, 846 F. App'x 689, 693 (10th Cir. 2021) (unpublished) ("Schultz died before the Estate filed the complaint, so any Article III problem caused by that event existed at the case's inception. As a result, the proper framework for this analysis is whether the Estate has standing."); *cf. United States v. Ramos*, 695 F.3d 1035, 1046–47 (10th Cir. 2012) (explaining that federal courts have an independent duty to examine standing).

The Tenth Circuit has considered whether a Medicaid's applicant's death moots claims for injunctive relief regarding certification of benefits and an award of past due benefits. *See Pecha ex rel. Pecha-Weber v. Lake*, 700 F. App'x 840, 841–42 (10th Cir. 2017) (unpublished). There, the plaintiff sought "an injunction ordering the Defendants–Appellees to cease denying Mr. Pecha's Medicaid application and coverage," which would in turn allow "[Mr.] Pecha to receive past Medicaid benefits . . . as relief ancillary to and in furtherance of the injunction." *Id.* at 844 (quotation modified).[4] The court

---

[4] In *Estate of Schultz*, the Court cited *Pecha*, finding it persuasive although nonprecedential. 846 F. App'x at 694.

10

concluded that the plaintiff's claim had become moot with the death of the plaintiff, stating as follows:

> Where a plaintiff seeks prospective equitable relief, such as an injunction, we have recognized that, for purposes of the mootness inquiry, a mere showing that he maintains a personal stake in the outcome of the controversy is insufficient. Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any *continuing*, present adverse effects. Specifically, the plaintiff must show susceptibility to *continuing* injury, or a likelihood of substantial and immediate irreparable injury.

*Id.* at 844 (quotation modified). The Tenth Circuit reached similar conclusions in *Estate of Schultz*, 846 F. App'x at 693,[5] and *Lamle v. Eads*, 134 F.4th at 565 (concluding that claims for "requested certification of eligibility and timely payment of benefits" became moot upon the plaintiff's death).

Similarly, here, although not labeled as injunctive relief, Plaintiffs' Amended Complaint seeks certification that the Applicants were eligible for Medicaid benefits and requests past benefits, dating to their respective stated dates of eligibility, which amounts

---

[5] In *Estate of Schultz*, the Tenth Circuit explained:

> The Estate's alleged injury stems from a violation of Schultz's right to a fair Medicaid review hearing. That violation was ongoing while Schultz lived and pursued her appeal. But Schultz is no longer with us; she no longer experiences whatever unfairness exists in Oklahoma's Medicaid appeals process. To state the obvious, the civil rights of a person cannot be violated once that person has died. And so, as the district court recognized, Schultz's injury also cannot reoccur: once dead, a plaintiff is no longer under a real and immediate threat of repeated injury. Thus, the Estate cannot allege the continuing or impending harm required to pursue prospective relief.

*Id.* at 693 (quotation modified). In *Lamle v. Eads*, the Tenth Circuit cited *Estate of Schultz* as persuasive. 134 F.4th 562, 566 (10th Cir. 2025).

to injunctive relief. [*See* Doc. No. 16 at 24]. In accordance with the above reasoning, the Court concludes that Plaintiffs do not seek "prospective equitable relief" for "continuing, present adverse effects" and thus a present case or controversy is lacking. *Pecha*, 700 F. App'x at 844.

In response to Defendants' argument that their claims are moot, Plaintiffs attempt to distinguish the above cases. Plaintiffs state that in both *Lamle* and *Schultz*, Medicaid applicants "sought prospective injunctions ordering the Agencies to certify them as eligible for Medicaid benefits and pay the benefits ancillary to those injunctions." [Doc. No. 20 at 29]. Plaintiffs distinguish their claims, stating "Plaintiffs are not seeking any prospective injunctive relief which requires the Applicants' survival. Instead, Plaintiffs seek damages from all Defendants." [*Id.* at 30].

In *Estate of Schultz*, the alleged violation was a right to a fair Medicaid review hearing. 846 F. App'x at 693. The court concluded that "Schultz is no longer with us; she no longer experiences whatever unfairness exists in Oklahoma's Medicaid appeals process." *Id.* The court further stated that "[t]he Estate alleges no independent injury it suffers or suffered that would support Article III standing." *Id.* "Schultz—not the Estate—applied for Medicaid benefits, so any protected interest belonged to her. The Estate merely seeks to redress a violation of Schultz's rights on her behalf." *Id.* at 693–94. Although, here, Plaintiffs' asserted violation is the wrongful denial of Medicaid benefits, similarly the protected interest in those benefits belonged to the Applicants, and Plaintiffs merely seek redress for those injuries but fail to identify an independent injury they suffer.

In *Lamle*, which involved Lamle's and Houston's denial of Medicaid benefits, the court found Plaintiffs' claims for a certification of Medicaid benefits and the related payment of benefits moot. 134 F.4th at 565. "The request for a reevaluation of the Medicaid applications became moot with the deaths of Ms. Lamle and Ms. Houston because their injuries had ended without any chance of reoccurring." *Id.* at 566.

Plaintiffs cannot escape the same decision in this case by omitting the label "injunctive relief" from their specific request that the Court order that the Applicants were "eligible for Medicaid benefits" commencing from their claimed dates of eligibility. [Doc. No. 16 at 24]. Plaintiffs are requesting the same relief and, as outlined above, lack standing to do so considering the deaths of the Applicants. Plaintiffs are seeking money damages, as well, but as in the prior case, and the cases discussed herein, the request for money damages depends upon the Court's certification that the applicants were entitled to benefits, for which they lack standing. The Court notes that the plaintiffs in the cases cited above also sought money damages. *See Lamle*, 134 F.4th at 564 ("[T]he applicants sought an injunction ordering an expedited decision and payment of Medicaid benefits . . . .") (bulleting omitted); *Pecha*, 700 F. App'x at 842 ("The requested injunction would have required both that Defendants–Appellees certify Mr. Pecha as eligible for Medicaid benefits and that the State pay three months' retrospective Medicaid benefits.").

Plaintiffs also attempt to distinguish their claims from the prior cases, stating that in this case they do not proceed via § 1983 alone but also assert a claim for violation of the Due Process Clause of the Fourteenth Amendment. [Doc. No. 20 at 30]. However, the

13

Tenth Circuit's reasoning in the above cases did not rely upon the cause of action asserted but instead focused on the plaintiffs' standing to pursue the relief sought. *See also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (explaining that a plaintiff must demonstrate standing for the form of relief sought). The form of relief sought by Plaintiffs is the same for each of their claims: recovery or receipt of Medicaid benefits to the deceased individuals. [Doc. No. 16 ¶¶ 41, 53, 65, 78, 88, 98, 107, 112, 117, 127, 127, 132; *see id.* at 24 (conclusion with demand for eligibility and payment of Medicaid benefits due to the deceased individuals)]. Accordingly, the addition of a Fourteenth Amendment claim does not change the analysis.[6]

## B.    The individual Defendants have qualified immunity against Plaintiffs' claims.

To the extent that Plaintiffs pursue claims for money damages against the individual Defendants untethered from any claim for injunctive relief, the Court must examine if the individual Defendants are entitled to qualified immunity. *See Lamle*, 134 F.4th at 566–67 (after concluding that the claim for injunctive relief was moot, proceeding to examine the claim for damages against the individual defendant to

---

[6] Moreover, although not raised by Defendants, Plaintiffs' ability to pursue a claim based directly on the Fourteenth Amendment is dubious as courts have not recognized the Fourteenth Amendment as creating a direct cause of action without a statutory vehicle. *Luther v. Okla. ex rel. Okla. Dep't of Hum. Servs.*, No. CIV-25-279-J, 2025 WL 1165282, at *4 (W.D. Okla. Apr. 2, 2025) ("[I]t is well established that the Constitution does not provide, by itself, a cause of action to address alleged violations of its provisions; a plaintiff must instead bring their claims of constitutional violations under a statute that provides a cause of action, such as 42 U.S.C. § 1983." (quotation modified)).

determine whether the individual defendant was entitled to qualified immunity). As outlined above, once a defendant raises qualified immunity in a motion to dismiss, the burden shifts to the plaintiff to show: (1) the plaintiff has alleged facts that make out a violation of a constitutional right, and (2) "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted); *see also Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019) ("A motion to dismiss based on qualified immunity imposes the burden on the plaintiff to show 'both that [1] a constitutional violation occurred and [2] that the constitutional right was clearly established at the time of the alleged violation.'" (citation omitted)). At the pleading stage, "plaintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).

The Court begins its qualified immunity analysis by examining if Plaintiffs have sufficiently identified facts giving rise to a violation of Plaintiffs' rights. Both in their Amended Complaint and in their Responses, Plaintiffs assert that their basis for their claims against the individual Defendants is that they wrongfully denied the Medicaid applications of the Applicants. [Doc. No. 16 ¶¶ 72, 81, 92, 110, 115, 120, 130, 135; Doc. No. 23 at 14–16; Doc. No. 32 at 13–15].[7] Specifically, Plaintiffs state that "[i]n their

---

[7] Each of Plaintiffs' three claims against the individual Defendants relies upon allegations that the individual Defendants wrongfully denied the Applicants' Medicaid applications. [Doc. No. 16 ¶¶ 72, 82, 91, 110, 115, 120, 130, 135].

planning, Applicants transferred assets in exchange for promissory notes. The notes

Applicants used were identical to the notes litigated in the following seven cases before

the Tenth Circuit and United States District Court for the Western District of Oklahoma."

[Doc. No. 23 at 15–16]. As demonstrated by the published Tenth Circuit case Plaintiffs

cite, the determination of whether a promissory note constitutes a resource for purposes

of Medicaid eligibility depends on the characteristics of the specific promissory note at

issue. *See Rose ex rel. Rose v. Brown*, 14 F.4th 1129, 1132 (10th Cir. 2021). Although

Plaintiffs assert that the promissory notes at issue here are "identical" to the ones in the

cases Plaintiffs cite, the Court notes that in *Rose* the Tenth Circuit did not determine that

the note at issue should be excluded as a resource but instead determined fact issues

precluded summary judgment on the issue. 14 F.4th at 1139 ("We conclude that a

genuine factual dispute exists on whether the 2018 promissory note is a resource . . . .").

Because of the fact-dependent nature of determining whether a promissory note is

a resource, Plaintiffs' allegations that the notes are identical to the ones in the cases cited

are insufficient to plead a violation of rights.[8] Plaintiffs have not made factual allegations

---

[8] The Court also notes that, in the cases cited by Plaintiffs, each promissory note had distinguishing characteristics and the court's analysis was not identical. *See, e.g.*, *Rose*, 14 F.4th at 1132 (considering whether the promissory note at issue was considered a resource under the regular method (bona fide and nontransferable) and under the trust method); *Gragert v. Lake*, 541 F. App'x 853, 855–857 (10th Cir. 2013) (unpublished) (analyzing a promissory note granted in exchange for a $28,800 rental house sold to applicant's son for that amount plus interest and remanding the case because the note was not properly categorized as a resource because it was illiquid according to its terms which "expressly prohibits the lender from assigning, transferring, or selling it or any payments thereunder"); *Gragert v. Hendrick*, No. CIV-11-984-C, 2014 WL 287238, at *1–2 (W.D. Okla. Jan. 24, 2014) (considering a promissory note in which applicant's son promised to pay $28,800 in 96 monthly installments of $330.28 to purchase a rent house and

that the Applicants' promissory notes contained language similar to the notes at issue in the cases Plaintiffs cite and thus require a finding that the promissory notes do not constitute resources. Nor is Plaintiffs' statement that the Applicants "engaged in Medicaid planning which the Tenth Circuit has held to be legal and acceptable" sufficient to overcome the individual Defendants' assertion of qualified immunity. [Doc. No. 23 at 15]. Although the Tenth Circuit has held that Medicaid planning is legally acceptable *in certain circumstances*, that does not mean the Applicants' Medicaid planning was per se legal and acceptable without accompanying factual allegations regarding the nature of the promissory notes at issue. *See, e.g.*, *Morris v. Okla. Dep't of Hum. Servs.*, 685 F.3d 925, 933 (10th Cir. 2012) (exemplifying a type of permissible Medicaid planning).

Plaintiffs have not sufficiently alleged facts that demonstrate the individual Defendants violated the Applicants' rights. Their factual allegations against the individual Defendants are that they wrongfully denied the Applicants' Medicaid applications because the Applicants transferred assets in exchange for Medicaid qualifying promissory notes. [Doc. No. 16 ¶¶ 39, 49, 61]. Plaintiffs fail to identify how the individual Defendants' actions amount to violations of the Applicants' rights, other

---

concluding it was not a trust-like device and thus not a resource); *Frantz ex rel. Spain v. Lake*, No. CIV-14-117-W, 2014 WL 4204875, at *2–5 (W.D. Okla. Aug. 22, 2014) (analyzing a promissory note issued in exchange for $98,000.00 in the form of a certificate of deposit and cash and deciding the promissory note was not a trust-like device and that the note was not a resource because it was illiquid). Thus, the Court is unable to parse Plaintiffs' argument that the Applicants' promissory notes were "identical" to those in the cases cited. Moreover, many of the cases cited by Plaintiffs are district court decisions, and district court decisions are "not binding precedent" and thus "do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).

than stating the denials were "wrongful" and that the promissory notes were "Medicaid qualifying." However, those classifications are conclusory without factual predicates. *See Moya v. Schollenbarger*, 465 F.3d 444, 455 (10th Cir. 2006) ("[T]he proper standard for evaluating dismissal in a qualified immunity case is the normal standard [courts] apply to dismissals generally."); *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (explaining that courts disregard conclusory statements when evaluating motions to dismiss); *cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (explaining that "a conclusory allegation . . . does not supply facts adequate to show illegality"). Without identifying how the individual Defendants erred in their denials of the Applicants' Medicaid applications, the Court cannot conclude that Plaintiffs have pled factual allegations regarding violations of the Applicants' rights. Because Plaintiffs have failed to sufficiently plead facts amounting to violations, the Court does not have to reach whether the right at issue was clearly established. *But see supra* n.8. Accordingly, Plaintiffs have failed to meet their burden of overcoming the individual Defendants' assertion of qualified immunity.

## IV.   <u>CONCLUSION</u>

For the reasons outlined above, the Court GRANTS the State's Motion to Dismiss Plaintiffs' Amended Complaint [Doc. No. 19]; Defendants Bean and Schweitzer's Joint Motion to Dismiss Plaintiffs' Amended Complaint [Doc. No. 21]; and Defendant Wunderle's Motion to Dismiss Plaintiffs' Amended Complaint [Doc. No. 28]. The Court dismisses Plaintiffs' claims against the State without prejudice and dismisses Plaintiffs'

claims against Bean, Schweitzer, and Wunderle with prejudice.[9] A separate judgment will follow.

IT IS SO ORDERED this 12th day of June 2026.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[9] *See Clark v. Wilson*, 625 F.3d 686, 692 (10th Cir. 2010) (directing the district court to dismiss "with prejudice" the claim against the individual defendant where entitled to qualified immunity).